FILED
2014 Sep-08  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| DANA LEIGH GARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:13-cv-412-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff, Dana Leigh Garrett, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Garrett timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).  (Doc. 11).

Ms. Garrett was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 27-28). Her past work experiences include employment as a drywall installer, box-spring maker, construction worker, and clerk. (Tr. at 29-32). Ms. Garrett claims that she became disabled on February 16, 2009, due to neck pain, lower back pain, carpal tunnel syndrome, headaches, arthritis, depression, knee problems, and nerve damage. (Tr. at 41, 98, 130).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.   *Id.*   If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.   20 C.F.R.   § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.   *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is

met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Garrett has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 18).   At the first stage of the evaluation, the ALJ determined that Ms. Garrett has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 13).   According to the ALJ, Plaintiff's left knee osteoarthritis, cervical spine stenosis, lumbar disc herniation, and carpal tunnel syndrome are considered "severe" based on the requirements set forth in the regulations.   (*Id.*)   She further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22).   The ALJ did not find Ms. Garrett's allegations of pain to be totally credible (Tr. at 15), and she determined that the plaintiff has the following residual functional capacity: the full range of sedentary work; except that she may only occasionally crouch, crawl, climb, or kneel; may not operate foot controls, and may frequently but not constantly use the upper extremities.   (Tr. at 14).

According to the ALJ, Ms. Garrett is unable to perform any of her past relevant work, she was a "younger individual" at the date of alleged onset, and she has a high school education and is able to communicate in English, as those terms are defined by

the regulations.  (Tr. at 17).  She determined that "transferability of skills is not material to the determination of disability" in this case. (Tr. at 17-18).  The ALJ found that Ms. Garrett has the residual functional capacity to perform a significant range of sedentary work.  (Tr. at 18).  Even though Plaintiff cannot perform the full range of sedentary work, the ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as assembler, hand sorter, and bench packager.  (*Id.*)  The ALJ concluded her findings by stating that Plaintiff is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. at 19).

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence

standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims], it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Garrett alleges that the ALJ's decision should be reversed and remanded because, she asserts, the ALJ failed to properly base her finding that plaintiff can perform some work on substantial evidence and, in reaching her conclusion, misapplied the law and regulations.   (Doc. 10).   Plaintiff contends that the ALJ's findings did not address all of the plaintiff's impairments in combination, and did not address the effect

of pain on plaintiff's ability to function.   (Doc. 10, p. 8).   Plaintiff points out that the allegations of pain do not require objective proof and cannot be disregarded on the sole basis that they are not supported by objective medical evidence.   (Doc. 10, p. 9).   She further asserts that her testimony regarding the pain must be considered truthful because there is no "inconsistency between Plaintiff's testimony and the well documented medical records."   (*Id.*)

The ALJ determined that Ms. Garrett could perform sedentary work with only occasional crouching, crawling, climbing, and keeling; no operation of foot controls; and frequent, but not constant, use of the upper extremities.   (Tr. at 14).   The Plaintiff asserts that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Jeff Long.   (Doc. 10, pp. 11-13).   Dr. Long opined that Ms. Garrett could sit only one hour per day without a break, could stand continuously only one hour per day without a break, and could not walk for more than 15 minutes at a time. (Ex. 8F).   The ALJ gave Dr. Long's functional capacity assessment little weight, based upon her determination that "the objective medical evidence of record fails to support it, not only in his own progress notes, but also in the medical evidence as a whole." (Tr. at 17).

The Court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational

factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## A.   Substantial Evidence Supports RFC Determination

The ALJ determined that Plaintiff has a residual functioning capacity to perform sedentary[1] work with the exceptions and limitations set forth *supra*.   After considering the entire record, the ALJ determined that Plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms, but found her statements regarding the intensity, persistence, and limiting effects of those symptoms lacked credibility.   (Tr. at 15).   The ALJ properly considered the evidence that Plaintiff had knee pain, noting that she was found to have edema in both knees in November 2009, had difficulty squatting and decreased reflexes in her legs in 2010, and that imaging

---

[1]        Although the ALJ referred to the RFC as "light work" at page 16 of the decision, it is clear from the rest of the decision, and from the transcript of the hearing, that the RFC was for sedentary work.   (*See* Tr. at 46-47).

showed moderate osteoarthritis in her knees in 2010.   (Tr. at 15).   Because of the knee

impairments indicated by this evidence, the ALJ imposed limits on the plaintiff's ability

to crouch, crawl, climb, kneel, or operate foot controls.   (Tr. at 16).   The ALJ also

noted that Plaintiff had moderate stenosis of the cervical spine, herniated discs in the

lumbar spine, and severe bilateral carpal tunnel syndrome.   (*Id.*)   As a result of these

findings, he imposed some limitations on Plaintiff's use of the upper extremities.   (Tr.

at 16).   The ALJ further found Ms. Garrett's allegations regarding her disability "less

than fully credible" because the consultative physical examination showed that Plaintiff

had a "normal neck, gait, and station," "okay grip and strength" and only "mild stenosis"

and a "mildly displaced nerve root" at the lumbar herniation.   (*Id.*)   The ALJ further

discounted Plaintiff's allegations of disability as not fully credible because the medical

records indicated that her pain had been controlled "relatively effective[ly]" by her

prescription medications.   (Tr. at 16).   The ALJ referred to treatment notes in which

her treating physician consistently noted that the "meds help" with Ms. Garrett's pain.

(Ex. 2E).

The ALJ examined the evidence, along with the consultative examination, and

provided a detailed analysis and reasoning for the weight accorded to each.   The

Plaintiff has pointed out that the ALJ did not separately discuss "degenerative disc

disease." In light of the ALJ's examination of all the evidence relating to the disorders that arose from her cervical and spinal discs, however, this argument is without merit.

Ms. Garrett further asserts that she was not obligated to substantiate her pain allegations by objective medical evidence. However, the ALJ did not find that she did not have the conditions or accompanying pain; the ALJ simply found that the conditions affecting her knees, neck and back, and her carpal tunnel syndrome, are not so debilitating as to render her unable to perform certain work. The medical records show that the conditions did exist, but consistently rate the cervical and lumbar spine conditions as mild or moderate, and consistently demonstrate that plaintiff was helped by medication.

Accordingly, the ALJ's RFC determination is supported by substantial evidence. The decision was both comprehensive and consistent with the applicable SSA rulings.


**B.    Ms. Garrett's Allegations of Pain**

Plaintiff asserts that the ALJ's evaluation of her subjective complaints of pain was improper. She argues that the ALJ failed to address the effect her pain had on her ability to function, and ignored her allegations that she must spend most of her day lying in a recliner and is unable to walk, sit, or stand for any extended period.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's

credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit Court of Appeals's pain standard, but she did not believe that the evidence confirms that the impairments are of such severity that they could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff.   (Tr. at 17).   The ALJ noted that the limitations described by Plaintiff could not be objectively verified, and were not attributable to the medical conditions.   (*Id.*)   The record supports the ALJ's skepticism regarding her credibility, based at least in part upon her repeated statements that medication can "ease" her pain, and records that show improvement after medication, trigger point injections, and epidural steroid injections.   (Tr. at 40, Ex. 6F).

The ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and she provided explicit and reasonable reasons for rejecting Plaintiff's testimony regarding the severity of her pain.   The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's conditions did not cause disabling limitations and instead shows that she could perform a reduced range of sedentary work.

### C.  Weight Given to Treating Physicians

Ms. Garrett further asserts the ALJ improperly evaluated and failed to give proper weight to her treating physician's evaluation of her RFC.  (Doc. 10, p. 11)   A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).   The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).   Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Opinions regarding whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Long, Plaintiff's treating physician, completed a functional capacity assessment for Plaintiff on August 9, 2011. (Tr. at 256-57). He described Plaintiff as being unable to stand or sit for more than an hour, or to walk for more than 15 minutes. (Tr. at 256). He stated that he has seen Plaintiff more than 20 times. (*Id.*) Dr. Long further stated that Plaintiff would miss more than 16 days of work per month due to her impairments. (Tr. at 256).

The Plaintiff argues that Dr. Long's assessment should be controlling, and that the ALJ improperly gave little weight to the evaluation. The ALJ provided a thorough

discussion of the Plaintiff's medical records from Dr. Long, discussing the improvements seen with medication and other treatments. The ALJ correctly noted that the treatment notes and Ms. Garrett's testimony from the hearing consistently indicate that she has no side effects from her medication except drowsiness.

The ALJ rejected Dr. Long's Functional Capacity Assessment as inconsistent with his earlier records and treatments. *See, e.g., Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ did not err in declining to refer to [the treating physician's] opinion because [the treating physician] originally opined that claimant could perform sedentary work and did not provide any objective medical evidence to support his change of heart."); *see also Villarreal v. Secretary of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (holding that the ALJ reasonably relied on Plaintiff's "conservative treatment" in assessing credibility). The information regarding Ms. Garrett's inability to walk, sit or stand is largely unsupported by the other evidence in the record. Plaintiff's own testimony was that she could walk for 15 to 30 minutes before she needed to rest. (Tr. at 35). The ALJ therefore had good cause to disregard Dr. Long's assessment based upon its inconsistency with the treating doctor's own records and the plaintiff's own testimony. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

Finally, Ms. Garrett asserts that Dr. Longmire's opinions also were entitled to more weight than the ALJ gave them.   Dr. Longmire noted, on January 18, 2011, an antalgic gait, reduced range of motion in her shoulders and spine, and weakness in her legs and arms.   (Tr. at 238).   Dr. Longmire saw Ms. Garrett, however, a week after a fall.   (*Id.*) While his records demonstrate some agreement with Dr. Long's prescription of narcotic pain medication, they do little to provide any insight into the chronic pain Ms. Garrett claims to have.   Dr. Longmire relied upon the same records of mild to moderate stenosis and disc disorders as noted by Dr. Long.   Similarly, Dr. Ali reports the same bulging or herniated discs and mild stenosis, but also notes improvements with medication and injections.    (Tr. at 213-233).

In this case, the ALJ specifically determined that the objective medical evidence failed to support Dr. Long's opinion (Tr. at 17), and that Dr. Long's opinion was inconsistent with the evidence that showed that medication helped ease the plaintiff's pain.   The same objective evidence of "mild to moderate" impairment supported the ALJ's evaluation of the records of Drs. Ali and Longmire.   The ALJ's determination must stand, even when the treating physicians "would most likely disagree" with the ALJ, and even when the court finds that "the evidence preponderates against" the ALJ's decision.   *Moore v. Barnhart*, 405 F.3d 1208, 14 (11th Cir. 2005).

**IV.     Conclusion**

Upon review of the administrative record, and considering all of Ms. Garrett's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law.   A separate order will be entered.

DATED this 8th day of September, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE